COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Senior Judge Annunziata

ANGELA RENEE TUSING

MEMORANDUM OPINION[*]
v.      Record No. 1465-13-3                                    PER CURIAM
                                                                DECEMBER 27, 2013
HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

(W. Andrew Harding, on brief), for appellant. Appellant submitting
on brief.

(Kim Van Horn Gutterman, Assistant County Attorney; Sheila R.
Keesee, Guardian *ad litem* for the minor child, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.


Angela Renee Tusing (mother) appeals an order terminating her parental rights to her child,

A.T. Mother argues the trial court erred by finding there was sufficient evidence to terminate her

parental rights pursuant to Code § 16.1-283(B) and changing the foster care plan goal to adoption

where the elements of the statute were not established. Upon reviewing the record and briefs of the

parties, we conclude the trial court did not err. Accordingly, we affirm the decision of the trial

court.

We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human

Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

A.T. was born on April 2, 2012. Mother also had two children who were older than A.T. In 2010, the two older children were adjudicated as abused and neglected by mother and were placed in the custody of a relative.

On July 3, 2012, mother had a scheduled meeting with her probation and parole officer. She arrived late for the meeting and tested positive for marijuana and methamphetamine. Mother left two of her children, including the infant A.T., in her car with a friend during the appointment. A probation officer approached mother's car and saw the two children were alone in the car which had been left with the engine running. The probation officer located mother's friend "across the street" and the friend admitted she had used drugs that morning. The friend said mother was aware that she had used drugs that day. The car also contained a drug smoking device and bottles of urine. Marijuana was located in A.T.'s diaper bag. A probation officer testified that when she questioned mother about the bottles containing urine, mother did not deny she had used "someone else's urine" for drug tests in the past, but she stated she did not do so on that date. A.T. was placed into foster care on July 3, 2012.

Mother pled guilty to two counts of felony child endangerment arising from the July 3, 2012 incident and she was incarcerated until October 2012. When she was released, Harrisonburg Rockingham Social Services District (HRSSD) advised mother that in order to regain custody of A.T., she needed to remain substance free, establish stable housing and employment, maintain contact with HRSSD and improve her parenting skills. In addition, HRSSD offered mother substance abuse counseling, parenting classes, individual and group counseling, and a psychological evaluation. Mother participated in the psychological evaluation, but she failed to complete the other offered services. She also missed numerous scheduled drug screenings.

In January 2013, an HRSSD employee informed mother that if she could demonstrate sobriety and maintain contact with HRSSD for six weeks, she could begin visitation with A.T.

However, mother refused to participate in several drug screens that month. On February 1, 2013, HRSSD informed mother she had to complete a hair follicle drug screen by 12:00 p.m. that day. Mother reported for the test in the afternoon, and her hair appeared to be chemically treated. She passed the hair follicle drug screen on that date. However, on February 6, 2013, mother was arrested and charged with methamphetamine possession. Mother also possessed drug paraphernalia and a device that appeared to be used for the storage of urine. At the time of the trial in this case, the drug charges were still pending and mother had not been sentenced for the two felony child endangerment charges.

HRSSD submitted a new foster care plan for A.T. with the goal of adoption. While mother was in jail, substance abuse treatment was available to her, but she failed to participate in the program.

At the time of trial, A.T. had been in foster care for eleven months. A social worker testified the foster family was loving and committed and was meeting the needs of the child. The foster family was interested in adopting A.T. The guardian *ad litem* testified A.T. was "very responsive to the [foster] family," and he was "thriving" in their care. The guardian *ad litem* opined that adoption was in the child's best interests. Mother had not seen A.T. since he was removed from her custody on July 3, 2012.

Prior to the July 3, 2012 incident, mother had several convictions for drug offenses dating back to 2004. HRSSD had been involved with the family since 2009, and they experienced difficulty maintaining contact with mother because she was unavailable by telephone and often cancelled or rescheduled appointments. In 2011 and 2012, HRSSD referred mother to several substance abuse programs, but she failed to complete any of them.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin

v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Termination of parental rights under Code § 16.1-283(B) requires proof, based upon clear and convincing evidence, that termination is in the best interests of the child, "the neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development," and "[i]t is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent . . . within a reasonable period of time." Code § 16.1-283(B)(1) and (2). "In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care." Code § 16.1-283(B)(2).

The trial court found mother's continuous drug use was "the major issue" in the case. The court found mother had not responded to or followed through with "appropriate, available and reasonable rehabilitation efforts" that had been offered to her by several agencies--HRSSD, the probation department, and the Department of Corrections while she was incarcerated. The trial court noted mother had drug charges as recent as February 2013, and, as far back as eight years earlier, mother had been offered services and programs to deal with substance abuse issues. The trial court found mother showed a pattern of evading or avoiding drug screens and she continued to use drugs even while she was on probation. Mother missed appointments with her probation officer and had numerous positive drug screenings. The trial court observed that in January 2013, HRSSD presented mother with a "manageable goal" of remaining drug free and compliant for six weeks in order to have visitation with A.T. Yet mother could not meet that goal. Furthermore, the guardian

*ad litem* expressed concerns about A.T.'s development while in mother's custody and opined that termination of mother's parental rights was in the best interests of the child.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

A parent's "'past actions . . . over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 695-96, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

Based on this record, the trial court was entitled to conclude mother had a substance abuse addiction that seriously impaired her parenting abilities and mother had not responded to or followed through with recommended and available treatment which could have improved her capacity for adequate parental functioning. The record also supports a finding that, as a result of mother's past and continuing drug use, A.T. suffered neglect or abuse that "presented a serious and substantial threat to his life, health or development," particularly when he was left in a running car with a friend whom mother knew had used drugs that day. Also from the evidence of mother's failure to remain drug free and respond to available substance abuse services over an eight-year time period, the trial court could conclude it is not reasonably likely that the conditions which resulted in the neglect and abuse of A.T. can be substantially corrected or eliminated so as to allow his safe return to mother within a reasonable period of time. Indeed, in 2010, mother lost custody of A.T.'s older siblings and they had not been returned to her custody at the time of trial. Mother had not seen A.T. since he was removed from her care in July 2012. In addition, at the time of trial, mother

was incarcerated and she faced the possibility of being sentenced to years of incarceration for the two charges of child endangerment, a pending drug charge, and a potential probation violation.

Furthermore, A.T. was responsive and thriving with the foster care family. Moreover, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

In determining what is in the best interests of a child, this Court has stated

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

The trial court concluded it was in the child's best interests to terminate mother's parental rights. The record supports the court's determination.[1]

Accordingly, we affirm the decision of the trial court.

Affirmed.

---

[1] Mother also contends the trial court erred in approving the foster care plan "change in goal" to adoption. "A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations, while the more stringent clear-and-convincing-evidence standard applies to the ultimate termination decision." Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240, 629 S.E.2d 721, 722 (2006). It logically follows, therefore, that our conclusion that the trial court did not err in terminating mother's parental rights under the more stringent clear-and-convincing-evidence standard set forth in Code § 16.1-283(B) and (C) "necessarily subsumes" this aspect of mother's appeal. Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3.